[Cite as *State v. Stoker*, 2011-Ohio-3934.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Julie A. Edwards, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2010-CA-00331 |
| MICHAEL O. STOKER, JR. | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:       Criminal appeal from the Stark County
                               Court of Common Pleas, Case No. 2010-
                               CR-0842


JUDGMENT:                      Affirmed


DATE OF JUDGMENT ENTRY:        August 8, 2011


APPEARANCES:

For Plaintiff-Appellee                 For Defendant-Appellant

JOHN D. FERRERO                        BARRY T. WAKSER
Stark County Prosecutor                Stark County Public Defender
110 Central Plaza South                200 Tuscarawas St. W., Ste. 200
Canton, OH  44702                      Canton, OH 44702

*Gwin, P.J.*

{¶1} Defendant-appellant Michael O. Stocker, Jr. appeals his conviction and sentence in the Stark County Court of Common Pleas for failing to notify the sheriff of a change of address in violation of R.C. 2950.05(A), a felony of the third degree in light of the Ohio Supreme Court's decision in *State v. Bodyke,* 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE CASE AND FACTS

{¶2} Appellant was convicted of Unlawful Sexual Conduct With a Minor on July 2, 2003.[1] As a result of his conviction, appellant was classified as a sexually oriented offender by operation of law and not by a separate finding of the trial court. Appellant's classification, furthermore, was based on the law applicable at the time of his conviction, which was Ohio's version of Megan's Law.

{¶3} Prior to trial, appellant filed a motion to dismiss the charge against him based upon the Ohio Supreme Court's decision in *State v. Bodyke,* 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753.

{¶4} The General Assembly enacted Senate Bill 10, which amended numerous sections of Ohio's Revised Code, including, inter alia, R.C. Chapter 2950, which contains the sexual offender classification system in Ohio. Senate Bill 10 modified R.C. Chapter 2950 so that it would be in conformity with the federal legislation, the Adam Walsh Act. Such modification was accomplished by amending certain statutes, repealing others, renumbering a few sections, and adding new sections. The result is that a large portion of the chapter changed. Those changes, however, did not all become effective on the same date. Portions of Senate Bill 10

---

[1] The parties stipulated on the record to most of the pertinent facts.

became effective on July 1, 2007, while other portions did not become effective until January 1, 2008. See, *State v. Gooding*, Coshocton App. No. 08 CA 5, 2008-Ohio-5954 at ¶ 8.

{¶5}    The changes made to R.C. Chapter 2950 by Senate Bill 10 altered the sexual offender classification system. Under pre-Senate Bill 10, depending on the crime committed and the findings by the trial court at the sexual classification hearing, an offender who committed a sexually oriented offense that was not registry exempt could be labeled a sexually oriented offender, a habitual sex offender, or a sexual predator. Each classification required registration and notification requirements. For instance, for a sexually oriented offender, the registration requirement was once annually for 10 years and there was no community notification requirement; for a habitual sex offender the registration requirement was for every 180 days for 20 years and the community notification could occur every 180 days for 20 years; and for a sexual predator, the registration duty was every 90 days for life and the community notification could occur every 90 days for life. *Gooding*, supra at ¶ 10.

{¶6}    Under Senate Bill 10, those labels are no longer used and the registration requirements are longer in duration. An offender who commits a sexually oriented offense is found to be either a "sex offender" or a "child-victim offender". Depending on what crime the offender committed, they are placed in Tier I, Tier II or Tier III. The tiers dictate what the registration and notification requirements are. Tier I is the lowest tier. It requires registration once annually for 15 years, but there are no community notification requirements. Tier II requires registration every 180 days for 25 years, but it also has no community notification requirements. Tier III, the highest tier and similar to the old

sexual predator finding, requires registration every 90 days for life and the community notification may occur every 90 days for life. *Gooding*, supra at ¶ 11.

{¶7} As a result of the reclassification scheme, appellant in the case at bar was reclassified as a "Tier II" offender. As a sexually oriented offender under former law, appellant was required to register with the Sheriff's Office once annually for ten years. [Former Ohio Rev. Code Ann. R.C. 2950.07(B)(3) (repealed January 1, 2008)]. But as a "Tier II" offender under Senate Bill 10, appellant was required to register every 180 days for twenty-five years.

{¶8} On June 3, 2010 the Ohio Supreme Court decided *State v. Bodyke,* 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753. In *Bodyke,* the Court concluded that R.C. 2950.031 and R.C. 2950.032, which require the attorney general to reclassify sex offenders whose classifications have already been adjudicated by a court and made the subject of a final order, violated the separation of powers doctrine by requiring the opening of a final judgment. The *Bodyke* Court concluded that R.C. 2950.031 and R.C. 2950.032 "may not be applied to offenders previously adjudicated by judges under Megan's Law, and the classifications and community-notification and registration order imposed previously by judges are reinstated." *Bodyke* at ¶66.

{¶9} In his pre-trial motion to dismiss appellant argued that during the interim period between January 1, 2008 when Senate Bill 10 became effective and June 3, 2010 when the Ohio Supreme Court released the decision in *Bodyke* he was "unclassified" and could not be required to comply with the accompanying duties of a Tier II offender, including periodic verification of his residence and of a change of residence.

{¶10} On September 9, 2010, the trial court overruled the motion, and after appellant waived his right to a trial by jury, the case proceeded to trial to the court.

{¶11} Stark County Sheriff's Deputy Detective John von Spiegel, responsible in part for monitoring registered sex offenders in Stark County, learned that appellant had lived in Louisiana for four to five weeks without having notified the Stark County Sheriff of his move. Upon returning to Stark County, appellant arranged to meet with von Spiegel in order to notify the appropriate authorities of his new residence. Thus, on May 27, 2010, appellant met with von Spiegel to discuss his Stark County residence.

{¶12} At this meeting, appellant admitted that he had left his Stark County residence on April 24, 2010, arriving in Louisiana on April 27, 2010. Appellant had not notified the Stark County Sheriff of his intent to change his residence, as required by law. Upon arriving, appellant notified the Sheriff's Department in Louisiana of his residence. Appellant admitted that he stayed in Louisiana until May, and notified the appropriate Louisiana authorities on May 17, 2010, of his intent to leave that state and return to Stark County, Ohio. On May 22, 2010 appellant returned to Stark County, and arranged for the May 27th meeting with Detective von Spiegel.

{¶13} After talking with appellant, Detective von Spiegel contacted appellant's grandfather to obtain further information about appellant's move to Louisiana. Detective von Spiegel learned from the grandfather that appellant had actually left Stark County sometime during the end of March or the beginning of April (and not the April 24 date that appellant gave). Thus, appellant's whereabouts were unknown for some three weeks.

{¶14} Detective von Spiegel testified that appellant, being classified a sexually oriented offender, had the duty to register with the Stark County Sheriff once a year for ten years. Furthermore, appellant was obligated to notify the Sheriff of any change in employment or residence. With regard to a change of residence, appellant was obligated to notify the Sheriff 20 days before moving. Finally, Detective von Spiegel testified that the obligations to notify the Sheriff of a change of residence 20 days before moving were the same under Ohio's Megan's Law and Ohio's Adam Walsh Act.

{¶15} Based upon the evidence presented at this bench trial, the trial court found appellant guilty of the charged offense of failure to notify of change of address. The trial court deferred sentencing and ordered a Presentence Investigation Report.

{¶16} On October 22, 2010, the trial court sentenced appellant to a three year term of community control.

{¶17} Appellant has timely appealed raising the following assignment of error,

{¶18} "I.  THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S MOTION TO DISMISS."

I.

{¶19} In his First Assignment of Error, appellant argues that because his re-classification to a Tier II sex offender was unconstitutional he was "unclassified" and therefore not required to notify the Stark County Sherriff of his decision to leave Ohio during April and May 2010.  We disagree.

{¶20} The Supreme Court of Ohio has recently made it clear that *Bodyke* not only applied to return pre-Adam Walsh Act offenders to their prior classifications, but also returned those offenders to their pre-Adam Walsh Act reporting requirements. In

*State v. Gingell,* —— Ohio St. 3d ——, 2011–Ohio–1481 the court considered a case involving a sex offender convicted for violating a reporting requirement imposed by the Adam Walsh Act that required Tier III offenders to verify their addresses every 90 days. The court considered the application of *Bodyke* to *Gingell's* case and concluded that "pursuant to *Bodyke, Gingell's* original classification under Megan's Law and the associated community-notification and registration order were reinstated." *Gingell* at ¶ 8.

**{¶21}** Under the law in effect in 2003 when appellant was originally convicted, appellant was required to provide notice of an address change at least twenty days prior to changing his residence address during the period during which appellant is required to register. R.C. 2950.05(A). This twenty day requirement did not change with the enactment of Senate Bill 10. Therefore, because appellant had an ongoing duty to notify the sheriff of any change of his registered address, neither Senate Bill 10 nor *Bodyke* changed this requirement or his duty. See *State v. Huffman,* Montgomery App. No. 23610, 2010-Ohio-4755. The evidence in the case at bar was uncontroverted that appellant failed to notify the sheriff of the change of his registered address.

**{¶22}** In 2003 appellant was subject to the reporting requirements as a sexually oriented offender for a period of ten years. R.C. 2950.07(B)(3) (repealed January 1, 2008). The pre-existing ten-year reporting period applicable to appellant had not expired when he was charged and convicted of failing to provide notice of an address change twenty days prior to the change. As the Ohio Supreme Court observed in *State v. Cook* (1998), 83 Ohio St.3d 404, 700 N.E. 2d 570, "Even prior to the promulgation of the current version of R.C. Chapter 2950, failure to register was a punishable offense.

See former R.C. 2950.99, 130 Ohio Laws 671. Thus, any such punishment flows from a failure to register, a new violation of the statute, not from a past sex offense. In other words, the punishment is not applied retroactively for an act that was committed previously, but for a violation of law committed subsequent to the enactment of the law." 83 Ohio St.3d at 420-421, 700 N.E. 2d at 584, 1998-Ohio-291.

{¶23} In conclusion, appellant's reclassification has no bearing on the outcome of his prosecution. According to *Bodyke,* appellant's reclassification as a Tier II offender cannot be enforced, and his original classification as a sexually oriented offender will be reinstated. Id. at ¶ 66, 933 N.E.2d 753. However, as stated above, appellant was required to register a change of address at least twenty days prior to changing said address even before his reclassification from a sexually oriented offender to a Tier II offender. He failed to do so and was appropriately prosecuted, convicted and sentenced.

{¶24} Accordingly, appellant's sole assignment of error is overruled.

{¶25} For the foregoing reasons, the judgment of the Stark County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Wise, J., and

Edwards, J., concur

_____
HON. W. SCOTT GWIN

_____
HON. JOHN W. WISE

_____
HON. JULIE A. EDWARDS

WSG:clw 0718

[Cite as *State v. Stoker*, 2011-Ohio-3934.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO                          :
                                       :
                  Plaintiff-Appellee   :
                                       :
                                       :
-vs-                                   :        JUDGMENT ENTRY
                                       :
MICHAEL O. STOKER, JR.                 :
                                       :
                                       :
                  Defendant-Appellant  :        CASE NO. 2010-CA-00331


    For the reasons stated in our accompanying Memorandum-Opinion, the judgment of

the Stark County Court of Common Pleas is affirmed.  Costs to appellant.


_____
HON. W. SCOTT GWIN

_____
HON. JOHN W. WISE

_____
HON. JULIE A. EDWARDS