[Cite as *State v. Edwards*, 2013-Ohio-3068.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No.    12CA010274 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DAVID EDWARDS | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No.    10CR081459 |

DECISION AND JOURNAL ENTRY

Dated: July 15, 2013

WHITMORE, Judge.

{¶1} Appellant, David Edwards, appeals from the judgment of the Lorain County Court of Common Pleas. This Court affirms.

I

{¶2} Edwards was living with his long-time girlfriend, Ramona Gail Sturtevant. Sturtevant is the paternal grandmother of J.S., who would frequently spend time at Sturtevant's house after school and on occasion would spend the night. J.S. and Edwards were friends and had a close, loving relationship. This changed around the time J.S. turned ten. At that time, J.S. became aggressive toward Edwards and began to avoid him.

{¶3} In June 2010, J.S. reported to school officials that Edwards had abused her. While the school officials did not notify her mother, J.S. told her that same day. Her mother immediately contacted the police. J.S. was interviewed by a detective and a social worker from

Children's Services.  Based on that interview, Edwards was indicted on one count of gross sexual imposition ("GSI"), in violation of R.C. 2907.05(A)(4), a felony of the third degree.

{¶4}    While the case remained pending, J.S. attended regular counseling sessions.  In August 2011, J.S. met with an assistant prosecutor to prepare for trial.  At this meeting, J.S. disclosed additional acts of abuse by Edwards.  Based on this meeting, Edwards was indicted on one count of rape, in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree, and an additional count of GSI, in violation R.C. 2907.05(A)(4), a felony of the third degree.

{¶5}    A jury convicted Edwards of the two counts of GSI, but found him not guilty of rape.  The court sentenced him to four years in prison.  Edwards now appeals and raises four assignments of error for our review.

II

Assignment of Error Number One

THE GUILTY VERDICTS ARE AGAINST THE SUFFICIENCY OF THE EVIDENCE IN VIOLATION OF MR. EDWARDS'S RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE 1, SECTION 10  OF THE OHIO STATE CONSTITUTION.

{¶6}    In his first assignment of error, Edwards argues that the State failed to produce sufficient evidence to support his convictions for gross sexual imposition.  Specifically, Edwards argues that the State failed to produce any evidence to establish that he had sexual contact with J.S. for the purpose of sexual arousal or gratification.

{¶7}    "'[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed.1990).  "In essence, sufficiency is a test of

adequacy." *Thompkins* at 386. When reviewing a conviction for sufficiency, evidence must be viewed in a light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. The pertinent question is whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*.

{¶8} "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Thompkins* at 386, citing *State v. Robinson*, 162 Ohio St. 486 (1955). This Court, therefore, reviews questions of sufficiency de novo. *State v. Salupo*, 177 Ohio App.3d 354, 2008-Ohio-3721, ¶ 4 (9th Dist.).

{¶9} R.C. 2907.05(A)(4) provides, in relevant part, that:

> No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender * * * when * * * [t]he other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person.

"Sexual contact" is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶10} "[I]n the absence of direct testimony regarding sexual arousal or gratification, the trier of fact may infer a purpose of sexual arousal or gratification from the 'type, nature and circumstances of the contact, along with the personality of the defendant.'" *State v. Antoline*, 9th Dist. Lorain No. 02CA008100, 2003-Ohio-1130, ¶ 64, quoting *State v. Cobb*, 81 Ohio App.3d 179, 185 (9th Dist.1991). "From these facts the trier of facts may infer what the defendant's motivation was in making the physical contact with the victim." *Cobb* at 185.

{¶11} J.S. testified that Edwards touched her breasts and "vaginal area" "below" her clothes with his hands and his mouth. She further testified that the touching occurred in 2009-2010, when she was 10 and 11 years old. Viewing the evidence in a light most favorable to the

State, "[J.S.'s] testimony alone was sufficient because, if believed, it could have convinced the average finder of fact beyond a reasonable doubt that [Edwards] had touched one or more erogenous zones of a child under the age of thirteen for the purpose of sexual arousal or gratification." *See State v. Thomas*, 9th Dist. Wayne No. 10CA0003, 2010-Ohio-6373, ¶ 10. Accordingly, Edwards' first assignment of error is overruled.

<u>Assignment of Error Number Two</u>

THE VERDICTS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF MR. EDWARDS'S RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE 1, SECTION 10 OF THE OHIO STATE CONSTITUTION.

{¶12} In his second assignment of error, Edwards argues that his convictions are against the manifest weight of the evidence. Specifically, Edwards argues that (1) Sturtevant's testimony establishes that Edwards never had the opportunity to commit the crimes; (2) J.S.'s testimony was conflicting and inconsistent; and (3) the jury's inconsistent verdicts demonstrate that it lost its way.

{¶13} A conviction that is supported by sufficient evidence may still be found to be against the manifest weight of the evidence. *Thompkins*, 78 Ohio St.3d at 387; *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other.'" (Emphasis sic.) *Thompkins* at 387, quoting *Black's* at 1594.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340.

{¶14} Sturtevant, J.S.'s paternal grandmother, testified that J.S. had a close, loving relationship with her long-time live-in boyfriend, Edwards. Sturtevant explained that things changed after J.S. turned 10 years old. J.S. became aggressive towards Edwards, had locked him in the shed for hours, and told the family that she wanted Edwards to die. Sturtevant denied ever leaving J.S. alone with Edwards for long periods of time, but did acknowledge that Edwards would occasionally be alone with her. Sturtevant said that the two could be alone when playing outside together, in another part of the house, or when she made a quick trip to the local grocery store. Sturtevant also testified that Edwards confessed to her that one day while J.S. was teaching him to use the computer he "had put his hand down in her bosom, on her breast, and pulled her bra strap." According to Sturtevant, Edwards told her that she was in the kitchen making food when this happened.

{¶15} J.S. testified that one day she "had an emotional breakdown during class and [ ] couldn't stop crying." She explained that her teacher pulled her into the hallway to ask what was wrong. Eventually, J.S. told her teacher that Edwards had "sexually molested" her, but did not provide any details. J.S. was taken to the vice principal's office where she repeated what she had told her teacher. J.S. was sent back to class and picked up at the end of the day by her mother, Olivia Rivera.

{¶16} Rivera testified that she picked up J.S. from school just like any other day and had not been informed by the school of J.S's report of abuse. Rivera stated that she knew immediately that something was bothering J.S. and thought maybe she had gotten into trouble at school. After pressing J.S. for what was bothering her, J.S. told Rivera that Edwards had been abusing her. J.S. did not tell Rivera any details of the abuse. Rivera called the police and J.S.'s father.

{¶17} A couple of days later, J.S. met with Detective Carpentiere and a social worker from Children's Services. J.S. told them that Edwards had touched her inappropriately, but made no allegations of cunnilingus. J.S. testified that she did not tell Detective Carpentiere and the social worker everything because she was "still very scared." After her interview, J.S. began meeting with a counselor. She met with her counselor once a week for a year. After completing counseling, J.S. met with an assistant prosecutor to prepare for trial. It was at this meeting that J.S. revealed that Edwards had "put his mouth on [her]." Based on this new allegation, Edwards was indicted on one count of rape and an additional count of GSI.

{¶18} After trial, the jury found Edwards not guilty of rape, but guilty of the two counts of GSI. Edwards argues that the jury's verdict is inconsistent because the jury did not believe J.S.'s allegations that formed the basis of the rape charge, but did believe her allegations of GSI.

{¶19} The State presented three witnesses: J.S., her mother, and her grandmother. The defense did not call any witnesses. After a careful review of the record we cannot conclude that Edwards' acquittal of rape makes his convictions for GSI against the manifest weight of the evidence. "In reaching its verdict, the jury was entitled to believe all, part, or none of the testimony of each witness." *State v. Howse*, 9th Dist. Lorain No. 12CA010251, 2012-Ohio-6106, ¶ 45.

**{¶20}** Further, we cannot conclude that J.S.'s failure to disclose all incidents of abuse in her initial interview means that "the *greater amount of credible evidence,* offered in a trial, [ ] support[s] one side of the issue rather than the other." (Emphasis sic.) *Thompkins* at 387, quoting *Black's* at 1594. J.S. testified that she did not reveal all of the abuse in her initial interview because she was scared. Further, she explained that her counseling sessions helped her talk about the abuse. After a review of all of the evidence, we conclude that this is not the exceptional case where the jury created a manifest miscarriage of justice in finding Edwards guilty of GSI. *See Otten*, 33 Ohio App.3d at 340. Accordingly, Edwards' second assignment of error is overruled.

Assignment of Error Number Three

> THE TRIAL COURT'S INSTRUCTIONS TO THE JURY WERE INCOMPLETE AND INACCURATE, AND THEREFORE DEPRIVED MR. EDWARDS OF A FAIR TRIAL IN VIOLATION OF HIS RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE ONE, SECTION 10 OF THE OHIO STATE CONSTITUTION.

**{¶21}** In his third assignment of error, Edwards argues that the court erred in failing to define "purposefully" in its instructions to the jury. Edwards concedes that no objection was raised at trial.

**{¶22}** "[W]here specific intent or culpability is an essential element of the offense, a trial court's failure to instruct on that mental element constitutes error." *State v. Wamsley*, 117 Ohio St.3d 188, 2008-Ohio-1195, ¶ 17, quoting *State v. Adams*, 62 Ohio St.2d 151, 153 (1980). Failure to object to jury instructions waives all but plain error. *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, ¶ 52. "Plain error exists only where it is clear that the verdict would have been otherwise but for the error." *Id.*, quoting *State v. Long*, 53 Ohio St.2d 91, 97 (1978). "[T]he plain error rule should be applied with utmost caution and should be invoked only to

prevent a clear miscarriage of justice." *State v. Underwood*, 3 Ohio St.3d 12, 14 (1983). In analyzing whether there is reversible plain error, "an appellate court must review the instructions as a whole and the entire record to determine whether a manifest miscarriage of justice has occurred as a result of the error in the instructions." *Wamsley* at ¶ 17. *See also Adams* at paragraph three of the syllabus.

{¶23} To be guilty of gross sexual imposition under R.C. 2907.05(A)(4), a defendant must touch the erogenous zone of another with the purpose of sexually arousing or gratifying either person. *State v. Dunlap*, 129 Ohio St.3d 461, 2011-Ohio-4111, ¶ 25. "The statute requires a specific intent behind the touching - the touching must be intended to achieve sexual arousal or gratification." *Id.*

{¶24} Here, on the charges of gross sexual imposition, the jury was instructed that to find Edwards guilty it must find that he "had sex[ual] contact with J.S., not the spouse of [Edwards,] and J.S. was less than thirteen years of age * * *." R.C. 2907.05(A)(4). The court properly defined sexual contact as "any touching of an erogenous zone of another * * * for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). The court erred in failing to define the term "purpose." However, under the facts of this case, we conclude the error does not rise to the level of plain error.

{¶25} "Purpose" is a commonly used word and is readily understood. A defendant's purpose may be inferred from "the 'type, nature and circumstances of the contact, along with the personality of the defendant.'" *Antoline*, 2003-Ohio-1130, at ¶ 64, quoting *Cobb*, 81 Ohio App.3d at 185. Here, J.S. testified that Edwards touched her "below" her clothes on her breasts and "vaginal area." The record does not indicate any other rational explanation for the contact, other than for the purpose of Edwards' sexual gratification.

{¶26} After reviewing the record, we conclude that the court erred in failing to instruct the jury on the definition of the required mens rea. However, this does not rise to the level of plain error because a specific instruction on the definition of purpose would not have produced a different result at trial. *See State v. Jay*, 8th Dist. Cuyahoga No. 91827, 2012-Ohio-914, ¶ 12. Accordingly, Edwards' third assignment of error is overruled.

Assignment of Error Number Four

MR. EDWARDS'S CONVICTIONS FOR GROSS SEXUAL IMPOSITION, BOTH FELONIES OF THE THIRD DEGREE, VIOLATED R.C. 2945.75(A)(2) BECAUSE THE JURY VERDICTS DID NOT INCLUDE THE DEGREE OF THE OFFENSE, NOR ANY AGGRAVATING ELEMENTS.

{¶27} In his fourth assignment of error, Edwards argues that the verdict forms are insufficient to support his convictions are felonies of the third degree. Specifically, Edwards argues that because the verdict forms "do not include the degree of the offense or the aggravating element that the victim was under the age of thirteen," he may only be convicted of a felony of the fourth degree, the least degree of the offense. We disagree.

{¶28} R.C. 2945.75(A)(2) provides that:

When the presence of one or more additional elements makes an offense one of more serious degree * * * A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged.

{¶29} In *State v. Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256, the Ohio Supreme Court held that strict compliance with R.C. 2945.75(A)(2) was required to support a conviction of tampering with governmental records, in violation of R.C. 2913.42(B)(4), and that the presence of additional circumstances would not excuse the failure to comply with the statute. *Pelfrey* at ¶ 14. The Court explained:

> The express requirement of the statute cannot be fulfilled by demonstrating additional circumstances, such as that the verdict incorporates the language of the indictment, or by presenting evidence to show the presence of the aggravating element at trial or the incorporation of the indictment into the verdict form, or by showing that the defendant failed to raise the issue of the inadequacy of the verdict form.

*Id*. The Court reasoned that "[t]he statutory requirement certainly imposes no unreasonable burden on lawyers or trial judges." *Id*. at ¶ 12.

{¶30} Subsequent to *Pelfrey*, the Ohio Supreme Court certified a conflict between *State v. Kepiro*, 10th Dist. Franklin No. 06AP-1302, 2007-Ohio-4593, (*Pelfrey* does not apply to GSI statute) and *State v. Sessler*, 3d Dist. Crawford No. 3-06-23, 2007-Ohio-4931 (*Pelfrey* applies to the intimidation statute). The Court certified the following question.

> Is the holding in *State v. Pelfrey*, 112 Ohio St.3d 422, applicable to charging statutes that contain separate sub-parts with distinct offense levels?

*State v. Sessler*, 116 Ohio St.3d 1505, 2008-Ohio-381. The Court answered the question in the affirmative and affirmed the Third District's decision without analysis, but disallowed an appeal in *Kepiro*. *State v. Sessler*, 119 Ohio St.3d 9, 2008-Ohio-3810; *State v. Kepiro*, 119 Ohio St.3d 1408, 2008-Ohio-3880. We note the Tenth District continues to hold that *Pelfrey* is inapplicable to R.C. 2907.05(A)(4). *See State v. Kepiro*, 10th Dist. Franklin No. 09AP-19, 2009-Ohio-4654.

{¶31} In 2012, the Ohio Supreme Court issued *State v. Eafford*, 132 Ohio St.3d 159, 2012-Ohio-2224. Eafford was indicted for possession of cocaine, but the jury verdict form only stated that he was "guilty of Possession of Drugs in violation of § 2925.11(A) of the Ohio Revised Code, as charged in Count Two of the indictment." *Id*. at ¶ 18. The Supreme Court did not apply the strict compliance standard it had previously set forth in *Pelfrey*. Instead, the Court applied a plain error analysis and concluded that "Eafford [had] not shown that but for the use of th[e] verdict form, the outcome of the trial would have been different." *Eafford* at ¶ 19. In its

rationale, the Court noted that "the indictment alleged that Eafford possessed *cocaine*, expert testimony confirmed that the substance at issue tested positive for *cocaine*, and throughout the trial the parties and the court treated the phrase 'possession of drugs' as synonymous with the possession of cocaine." (Emphasis sic.) *Id*. at ¶ 17. The Court further noted that the trial court included cocaine as the specific drug at issue in its jury instructions. *Id*.

**{¶32}** We note our sister courts resolve *Eafford* and *Pelfrey* differently. The Third District in *State v. Gregory*, 3d Dist. Hardin No. 6-12-02, 2013-Ohio-853, ¶ 17, noted that a conflict exists between *Eafford* and *Pelfrey*. Gregory was indicted on one count of domestic violence, as a felony of the third degree. However, the verdict form did not include the level of the offense or the additional element that Gregory had "previously pleaded guilty to or been convicted of two or more offenses of domestic violence[.]" *Gregory* at ¶ 19, quoting R.C. 2919.25(D)(4). In analyzing whether Gregory's verdict form supported his conviction as a felony of the third degree, the majority concluded that because *Eafford* did not expressly overrule *Pelfrey*, *Pelfrey* still controlled. *Gregory* at ¶ 19.

**{¶33}** In contrast, the Eighth District has concluded that *Eafford* and *Pelfrey* are reconcilable because the statutes at issue in the respective cases are distinguishable. *State v. Melton*, 8th Dist. Cuyahoga No. 97675, 2013-Ohio-257, ¶ 31. The Eighth District explained that "[t]he charge in *Eafford*, possession of cocaine, did not involve any additional elements that elevated the level of the offense." *Id*. At issue in *Melton* was "the crime of discharge of a firearm on prohibited premises *which causes serious physical harm to any person*. (Emphasis sic.) *Id*. at ¶ 32. The court concluded that because the serious physical harm element does increase the offense, the strict compliance analysis in *Pelfrey*, and not plain error analysis of *Eafford*, applied. *Melton* at ¶ 32.

**{¶34}** After a careful review of the relevant statutes and case law, we are persuaded by the rationale of the Tenth District and conclude that *Pelfrey* is inapplicable with respect to violations of R.C. 2907.05(A)(4). *See State v. Crosky*, 10th Dist. Franklin No. 06AP-065, 2008-Ohio-145, ¶ 147-148; *State v. Nethers*, 5th Dist. Licking No. 07 CA 78, 2008-Ohio-2679, ¶ 56-57. *Pelfrey* applies when "the presence of one or more additional elements makes an offense one of more serious degree." R.C. 2945.75(A).

**{¶35}** R.C. 2907.05(A)(4) provides, in relevant part, that:

> No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender * * * when * * * [t]he other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person.

A violation of R.C. 2907.05(A)(4) is a felony of the third degree. R.C. 2907.05(C)(2). There are no additional elements that will enhance this offense to a higher degree. R.C. 2907.05 does contain other subsections, but each has their own separate elements. Here, as charged in the indictment, the State was required to prove that Edwards had sexual contact with J.S. for the purpose of sexual arousal or gratification and that J.S. was under the age of thirteen at the time of the offense. Failure to prove any of these elements would have resulted in an acquittal, not a conviction of a lesser degree of gross sexual imposition.

**{¶36}** Because we conclude that *Pelfrey* does not apply to R.C. 2907.05(A)(4), Edwards' verdict forms are sufficient to support his convictions as felonies of the third degree. Edwards' fourth assignment of error is overruled.

### III

**{¶37}** Edwards' assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT


HENSAL, J.
CONCURS.

BELFANCE, P. J.
CONCURS IN JUDGMENT ONLY.


APPEARANCES:

PAUL GRIFFIN, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and MARY R. SLANCZKA, Assistant Prosecuting Attorney, for Appellee.