[Cite as *State v. Harter*, 2022-Ohio-2714.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No. 21CA0057-M |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| RAMONA L. HARTER | WADSWORTH MUNICIPAL COURT COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 20CRB00405 |

DECISION AND JOURNAL ENTRY

Dated: August 8, 2022

CALLAHAN, Judge.

{¶1} Defendant-Appellant, Ramona Harter, appeals from the judgment of the Wadsworth Municipal Court. This Court affirms.

I.

{¶2} Shortly after 4:00 a.m., the Medina County Sheriff's Office received a 911 call from Ms. Harter. Ms. Harter reported that she and her husband were at home, that a fight had occurred, and that he would not leave her and their son alone. Two officers responded to the scene and spoke with Ms. Harter and her husband. Ms. Harter was visibly intoxicated during her exchange with the officers. She admitted that she and her husband had argued but never claimed he had injured her or attacked her in any fashion. Meanwhile, the husband said Ms. Harter had repeatedly struck him in the face and scratched his arms. The officers observed fresh marks on the husband's arms and an injury to his lip. Although the husband did not wish to press charges against Ms. Harter,

the police arrested her based on their observations and the information they received from both parties.

{¶3}    Ms. Harter was charged with one count of domestic violence in violation of R.C. 2919.25(A).  She filed a motion to suppress, and the trial court held a suppression hearing.  After the trial court denied her motion, a jury trial ensued, and the jury found Ms. Harter guilty.  The trial court sentenced her to one year of probation and a fine.

{¶4}    Ms. Harter now appeals from her conviction and raises four assignments of error for this Court's review.

II.

**ASSIGNMENT OF ERROR NO. 1**

THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE JURY VERDICT
OF GUILTY.

{¶5}    In her first assignment of error, Ms. Harter argues that her domestic violence conviction is based on insufficient evidence.  This Court disagrees.

{¶6}    "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo."  *State v. Williams*, 9th Dist. Summit No. 24731, 2009-Ohio-6955, ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction.  *Thompkins* at 390 (Cook, J., concurring).  For purposes of a sufficiency analysis, this Court must view the evidence in the light most favorable to the State.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  We do not evaluate credibility, and we make all reasonable inferences in favor of the State.  *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991).  The evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt.  *Id.*

{¶7} A person commits domestic violence if she "knowingly cause[s] or attempt[s] to cause physical harm to a family or household member." R.C. 2919.25(A). "A person acts knowingly, regardless of purpose, when [she] is aware that [her] conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "'Physical harm to persons' means any injury * * * regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶8} Deputy Matthew Montgomery responded to the residence Ms. Harter and her husband shared after Ms. Harter phoned 911. He testified that Ms. Harter was "highly intoxicated" when he and another officer arrived. While another officer spoke with Ms. Harter, Deputy Montgomery spoke with the husband. He testified that the husband described how he and Ms. Harter argued after she became angry with him. During the argument, the husband stated, Ms. Harter slapped him a few times in the face, grabbed his arms, and scratched his arms. Deputy Montgomery observed fresh marks on the husband's arm as well as a small cut and slight swelling on the inside of his lip. The deputy testified that they arrested Ms. Harter because they determined that she was the primary aggressor.

{¶9} Sergeant Bruce Cornelius also responded to the scene following Ms. Harter's 911 call. The sergeant spoke with Ms. Harter and testified that she was "very intoxicated, * * * could barely stand, * * * and her speech was very slurred." Ms. Harter told the sergeant that she and her husband had argued, but she denied that either of them had struck the other. After speaking with Ms. Harter, Sergeant Cornelius went to speak with the husband. He testified that the husband said he and Ms. Harter had argued about something before she slapped his face a few times. Sergeant Cornelius observed areas of redness on the husband's face, swelling to his lip, and scratches on his arms. He confirmed that they arrested Ms. Harter because they determined that she was the primary aggressor.

{¶10} The husband testified at trial and denied physically assaulting Ms. Harter on the evening of their fight. Although he claimed he could not recall certain details about their evening or the specifics of his injuries, the husband acknowledged that any information he provided the police at the time of the incident would have been accurate. The husband reluctantly testified that he believed Ms. Harter had struck him in the face that evening by way of an open-hand slap.

{¶11} The State also played a videorecording from Sergeant Cornelius' body cam and introduced several photographs of the husband. The videorecording captured the sergeant's exchange with Ms. Harter and the husband, and the photographs documented the injuries to his face and arms. On the videorecording, the husband can be heard telling the officers that Ms. Harter struck him in the face a few times with an open hand and left marks on his arms when she grabbed him.

{¶12} Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that the State proved, beyond a reasonable doubt, that Ms. Harter committed the offense of domestic violence. *See Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus. There was testimony that she and her husband had a verbal disagreement, and, during that exchange, Ms. Harter slapped him several times in the face and scratched his arms. There also was evidence that the husband had fresh scratch marks on his arm, redness on his face, and swelling to his lip. Based on the foregoing evidence, the jury reasonably could have concluded that Ms. Harter knowingly caused physical harm to a family member. *See* R.C. 2919.25(A). Ms. Harter has not shown that her conviction is based on insufficient evidence, and thus, her first assignment of error is overruled.

**ASSIGNMENT OF ERROR NO. 2**

APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶13}** In her second assignment of error, Ms. Harter argues that her domestic violence conviction is against the manifest weight of the evidence. This Court rejects her argument.

**{¶14}** When considering whether a conviction is against the manifest weight of the evidence, this Court must:

> review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction. *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

**{¶15}** Ms. Harter argues that her conviction is against the manifest weight of the evidence because her husband never claimed to be a victim of domestic violence, did not want to press charges, and could not recall if she became physically aggressive with him. She notes that her husband had a background in martial arts and that she was the one who called 911 for help. According to Ms. Harter, she also sustained injuries that evening and there was no testimony about the cause of their fight. Even if the fight became physical, Ms. Harter argues, the jury lost its way when it concluded that she committed domestic violence.

**{¶16}** Ms. Harter chose to rely on cross-examination at trial rather than testify in her own defense. The jury did hear her speaking with Sergeant Cornelius, however, as the State introduced the videorecording from his body cam. While speaking with the sergeant, Ms. Harter indicated that she had hurt her arm that evening. Photographs taken of her arm the following day also

revealed bruising. Yet, Ms. Harter specifically told the sergeant that she did not know how she had hurt her arm and that it might have been from slamming her hand down on a table when she became angry. Ms. Harter never indicated that her husband had injured her on the evening of the fight. Nor did she raise any claim of self-defense at trial.

{¶17} Although the husband did not want to press charges against Ms. Harter and claimed he could not recall details from the evening of the fight, the jury heard the testimony of Deputy Montgomery and Sergeant Cornelius. Both men testified that the husband told them Ms. Harter had repeatedly slapped him in the face and had scratched his arms while grabbing him. Both men also observed fresh scratch marks to the husband's arms and an injury to his lip. Further, the husband admitted at trial that any information he provided the police at the time of the incident would have been accurate.

{¶18} Having reviewed the record, this Court cannot conclude that the jury clearly lost its way and created a manifest miscarriage of justice when it found Ms. Harter guilty of domestic violence. *See Otten*, 33 Ohio App.3d at 340. The jury heard testimony that Ms. Harter attacked her husband during a heated exchange and caused him physical injury. Ms. Harter never told the responding officers that her husband harmed her, and she never claimed to have acted in self-defense. Upon review, Ms. Harter has not shown that this is the exceptional case where the evidence weighs heavily against her conviction. *See id.*, citing *Martin*, 20 Ohio App.3d at 175. As such, her second assignment of error is overruled.

**ASSIGNMENT OF ERROR NO. 3**

THE TRIAL COURT ERRED WHEN IT WOULD NOT PERMIT DEFENSE COUNSEL TO CROSS-EXAMINE THE ALLEGED VICTIM REGARDING THE ISSUE OF MOTIVE AND INTENT.

{¶19} In her third assignment of error, Ms. Harter argues that the trial court erred when it refused to allow defense counsel to ask her husband certain questions on cross-examination. For the following reasons, this Court rejects her argument.

{¶20} "While a criminal defendant has the right to cross-examine witnesses, the trial court has discretion regarding the scope of cross-examination." *State v. Lawless*, 9th Dist. Wayne No. 16AP0025, 2018-Ohio-444, ¶ 8. "This Court reviews a trial court's decision to limit the scope of cross-examination for an abuse of discretion." *State v. Price*, 9th Dist. Summit No. 28291, 2017-Ohio-4167, ¶ 5. An abuse of discretion is present when a trial court's decision "'is contrary to law, unreasonable, not supported by evidence, or grossly unsound.'" *Menke v. Menke*, 9th Dist. Summit No. 27330, 2015-Ohio-2507, ¶ 8, quoting *Tretola v. Tretola*, 3d Dist. Logan No. 8-14-24, 2015-Ohio-1999, ¶ 25.

{¶21} According to Ms. Harter, the trial court erred when it refused to let defense counsel ask her husband questions related to the cause of the argument that occurred between them. Specifically, defense counsel sought to ask the husband: (1) whether he was living with a different female at the time of trial, and (2) whether he paid Ms. Harter an hourly rate for work she performed as a stay-at-home wife and mother. According to Ms. Harter, the trial court should have allowed those questions because they were probative of the cause of the argument between her and her husband and were relevant to the issues of motive and intent.

{¶22} Ms. Harter's third assignment of error fails for two reasons. First, to the extent Ms. Harter sought to prove that she and her husband argued over his alleged infidelity, defense counsel was permitted to ask the husband whether he and Ms. Harter had argued because he was seeing another woman. The husband specifically testified that he was not seeing another woman. He also repeatedly testified that he could not remember what their fight was about. Any argument

that he would have changed his testimony if defense counsel had been permitted to ask him additional questions is purely speculative. *See State v. Morgan*, 153 Ohio St.3d 196, 2017-Ohio-7565, ¶ 54 ("[S]peculation cannot prove prejudice.").

**{¶23}** Second, Ms. Harter has not explained why the underlying cause of the argument herein was relevant to either her defense or the State's case against her. *See* Evid.R. 401; Evid.R. 402. Ms. Harter never claimed that she acted in self-defense such that the subjective or objective reasonableness of her actions might be in question. The only issue for the jury was whether she knowingly caused physical harm to her husband, not *why* she might have done so. The jury heard testimony that Ms. Harter was extremely intoxicated when the police arrived, admitted she and her husband had argued, and denied that he had harmed her. The jury also heard testimony that the husband did not want to press charges against Ms. Harter, but that he had fresh scratch marks on his arm, swelling to his lip, and a cut to his lip from Ms. Harter slapping him. Ms. Harter has not explained how additional testimony about her husband's alleged infidelities or failure to compensate her for housework or childcare would have been relevant or would have changed the result in this matter. *See* App.R. 16(A)(7). Because she has not shown that the trial court abused its discretion when it limited defense counsel's cross-examination, Ms. Harter's third assignment of error is overruled.

### ASSIGNMENT OF ERROR NO. 4

> THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO SUPPRESS IN VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

**{¶24}** In her fourth assignment of error, Ms. Harter argues that the trial court erred when it refused to suppress statements she made to the police while seated in the back of a police cruiser. At oral argument, however, appellate counsel agreed to withdraw this argument, as any statements

Ms. Harter made during that time period were not introduced at trial. Because Ms. Harter has withdrawn her fourth assignment of error, this Court need not address it. *See State v. George*, 9th Dist. Summit No. 29292, 2019-Ohio-3871, ¶ 15.

III.

**{¶25}** Ms. Harter's first, second, and third assignments of error are overruled. Her fourth assignment of error has been withdrawn. The judgment of the Wadsworth Municipal Court is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wadsworth Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

TEODOSIO, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

ERIC D. HALL, Attorney at Law, for Appellant.

BRADLEY J. PROUDFOOT, Attorney at law, for Appellee.